# EXHIBIT B

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE | § | CASE NO. 15-52462-CAG-11 |
| | § | |
| FPMC SAN ANTONIO REALTY PARTNERS, LP, | § | CHAPTER 11 |
|  *Debtor.* | § | |

---

### INTERIM ORDER (i) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION FINANCING ON A SENIOR SECURED SUPERPRIORITY BASIS PURSUANT TO 11 U.S.C. §§105, 361, 362, 363, AND 364; (ii) SETTING A FINAL HEARING; AND (iii) GRANTING RELATED RELIEF

---

Upon the motion (the "*Motion*"),[1] dated October 20, 2015, of FPMC San Antonio Realty Partners, LP, ( "*Debtor*" or "*Debtor-in-Possession*"), as debtor and debtor in possession, in the above-captioned case (the "*Chapter 11 Case*") pursuant to §§105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e) of title 11 of the United States Code (the "*Bankruptcy Code*"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*") and the Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of Texas (the "*Local Bankruptcy Rules*"), seeking, among other things, entry of an interim order (the "*Interim Order*") and a final order (the "*Final Order*"):

1)   Authorizing the Debtor to obtain post-petition financing (the "*Financing*") in the form of a multiple-advance term loan made available to the Debtor in a principal amount of up to $5,000,000.00 (the "*Facility*") with superpriority claims and first-priority liens senior to any pre-petition or post-petition liens, pursuant to §§105, 361, 362, 363, and 364 of the Bankruptcy Code from Texas Capital Bank, N.A. or its designee (the " *Lender*" or "*DIP Lender*");

2)   Authorizing the Debtor to (a) execute and deliver final documentation substantially in the form of the *Senior Secured Super-Priority Debtor-in-Possession Loan and Security Agreement* attached hereto as **Exhibit A** (the "*DIP Credit Agreement*") and any other document requested by the DIP Lender, in its sole and absolute discretion, in connection with the Financing including, without limitation, notes, security agreements, pledge agreements, mortgages, financing statements, deeds of trust, and other security documents (along with the DIP Credit Agreement and all of the foregoing whenever executed,

---

[1] All capitalized terms and/or phrases set forth herein and not otherwise specifically described and defined herein shall bear the meanings and definitions ascribed thereto in the DIP Documents.

INTERIM ORDER (i) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION FINANCING ON A
SENIOR SECURED SUPERPRIORITY BASIS PURSUANT TO 11 U.S.C. §§105, 361, 362, 363,
AND 364; (ii) SETTING A FINAL HEARING; AND (iii) GRANTING RELATED RELIEF  PAGE 1

3908090v.1 2477/0224

collectively, the "*DIP Documents*") and (b) perform such other acts as may be requested by the DIP Lender as necessary or desirable, in the DIP Lender's sole and absolute discretion, in connection with the Financing and this Interim Order;

3)    Granting the DIP Lenders, for the purpose of securing the DIP Obligations, an automatically perfected first-priority lien, pursuant to §364(d)(1) of the Bankruptcy Code, subject only to Permitted Encumbrances and the Carve Out, on all property of the Debtor to secure all obligations owed to the DIP Lender under the Facility;

4)    Granting, with respect to the DIP Obligations of the Estate under this Interim Order, an allowed administrative expense claim to the DIP Lender pursuant to §364(c)(1) of the Bankruptcy Code having priority over all administrative expenses of the kind specified in or arising under the Bankruptcy Code (including, without limitation, §§105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 546(c), or 726 of the Bankruptcy Code), or other applicable law, but in all respects subject to the Carve Out;

5)    Authorizing and directing the Debtor to pay the principal, interest, fees, expenses, and other amounts payable under the Facility as such become due, including, without limitation, fees incurred and disbursements made by the DIP Lender for attorneys, advisors, accountants, and other consultants, all to the extent provided in and in accordance with the terms of the DIP Documents, as amended, modified, and/or supplemented by this Interim Order;

6)    Scheduling a final hearing (the "*Final Hearing*") pursuant to Bankruptcy Rules 4001(b), (c) and (d); and

7)    Granting related relief.

The Court having considered the Motion, having examined the exhibits attached thereto, and having completed the Interim Hearing (defined below) as provided for under §364 of the Bankruptcy Code, Bankruptcy Rule 4001(c), and applicable Local Bankruptcy Rules, and finding the Debtor provided notice as set forth below to all necessary parties and that no further notice is required:

BASED ON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT HEREBY

MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A)    **Petition Date**.  On October 6, 2015 (the "*Petition Date*"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "*Bankruptcy Court*" or this "*Court*").

B) **Debtor-in-Possession**. The Debtor has continued in the management and operation of its business and property as debtor in possession pursuant to §§1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Case.

C) **Committee Formation**. As of the date hereof, the Office of the United States Trustee (the "*U.S. Trustee*") has not appointed an official committee of unsecured creditors in the Chapter 11 Case.

D) **Jurisdiction**. This Court has core jurisdiction over the Chapter 11 Case, the Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§157(b) and 1334. The statutory predicates for the relief sought herein are §§105, 361, 362, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and 9014, and the Local Bankruptcy Rules. Venue for this Chapter 11 Case is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

E) **Notice**. Due and appropriate notice of the Motion, the relief requested therein and the Interim Hearing having been served by the Debtor on: (i) the Office of the United States Trustee for the Northern District of Texas; (ii) the Debtor's twenty (20) largest unsecured creditors on a consolidated basis; (iii) DIP Lender's counsel; (iv) any additional known Persons holding liens in the DIP Collateral in compliance with Bankruptcy Rules 4001(b) and 4001(c); and (v) any other parties-in-interest required to receive notice under the Local Bankruptcy Rules.

F) **Opportunity to be Heard**. Pursuant to Bankruptcy Rule 4001, an interim hearing (the "*Interim Hearing*") on the Motion was held before this Court to consider entry of an interim order on October --, 2015.

G) **Disposition**. The Motion is GRANTED on an interim basis in accordance with the terms of this Interim Order. Any objections to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby denied and overruled for purposes of this Interim Order.

H) **Affirmation of Pre-Petition Indebtedness, Obligations Under and Related Thereto**. Debtor and Texas Capital Bank, as Agent, Administrative Agent and Lender, together with the other Prepetition Lenders entered into that certain Amended and Restated Construction Loan Agreement dated November 15, 2013 (the "*Construction Loan*") under which Debtor borrowed the principal sum of $_____ which was used to construct that certain acute-care hospital located at _____ Texas. As part of this Interim Order, the Debtor/Debtor-in-Possession on behalf of itself and the Estate stipulate, agree, and affirm:

    i) The Debtor is in default of the Construction Loan and its obligations thereunder to the Prepetition Lenders;

    ii) The debt owed under the Construction Loan is not subject to any offset, defense, claim, counterclaim, or diminution of any type, kind, or nature whatsoever, and is not subject to avoidance, subordination, recharacterization, reduction, cap or limitation in amount under §502(b)(6) of the Bankruptcy Code, or any other challenge pursuant to applicable state or federal law, and nothing in this Interim

Order shall be construed to adversely affect or alter Debtor's obligations under the Prepetition Loan Documents.

iii) The Construction Loan and any other agreement ancillary thereto, arising under, connected with, or in any way related to the Construction Loan are unavoidable and valid, binding, and enforceable according to the terms, conditions, covenants, rights, duties, privileges, and responsibilities set forth in such documents, without defense, counterclaim or offset.

I) **Lender's Protections**. The DIP Lender is willing to lend money and provide other financial accommodations to the Debtor only on the terms and conditions and with the protections provided herein and in the DIP Documents and is relying on such terms, conditions, and protections in agreeing to lend money and provide financial accommodations to the Debtor hereunder.

J) **Immediate Entry of the Order**. The Debtor has requested that this Interim Order become immediately effective and enforceable upon entry, notwithstanding any provisions that may apply in Bankruptcy Rules 6004(h), 6006(d), 7062, or 9014 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure. The Debtor has demonstrated good cause for the entry of this Interim Order and for this Interim Order to become immediately effective and enforceable upon entry. Among other things, entry of this Interim Order and the immediate effectiveness and enforceability of this Interim Order upon entry is (i) necessary to (xx) avoid immediate and irreparable harm to the Debtor's bankruptcy estate (the "*Estate*") pending a final hearing by permitting the Debtor to satisfy its critical operating expenses, (yy) increase the possibilities for a successful outcome in this case for the Debtor, and (ii) in the best interests of the Debtor, its creditors, and the Estate. The terms of the borrowings and other financial accommodations authorized hereby are fair and reasonable under the circumstances and reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties.

K) **Findings Regarding the Financing**.

i) Good cause has been shown for the entry of this Interim Order;

ii) The Debtor has an immediate need to obtain the Financing on an interim basis, to the extent set forth in the Budget attached hereto as **Exhibit B**, as the term "Budget" is defined in the DIP Credit Agreement, to (a) fund the post-petition operating expenses of the Debtor incurred in the ordinary course of business; and (b) pay certain other costs and expenses of administration of the Chapter 11 Case. The Debtor's access to sufficient working capital and liquidity through the incurrence of new indebtedness is vital to the preservation and maintenance of the value of the Debtor's assets;

iii) The Debtor currently is unable to obtain financing on more favorable terms from sources other than the DIP Lender under the DIP Documents and is unable to obtain adequate unsecured credit allowable under §503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtor is also unable to obtain secured credit

allowable under §§364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the DIP Documents without the Debtor granting senior liens to the DIP Lender, subject to the priorities and under the terms and conditions set forth in this Interim Order and in the DIP Documents;

iv)     The terms of the Financing are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and constitute reasonably equivalent value and fair consideration;

v)      The Financing has been negotiated in good faith and at arm's length among the Debtor and the DIP Lender, and all of the Debtor's obligations and indebtedness arising under, in respect of or in connection with the Financing and the DIP Documents, including, without limitation, all loans pursuant to the DIP Documents, and any other expenses or obligations under the DIP Documents, including professionals fees and expenses incurred by the DIP Lender (all of the foregoing collectively, the "*DIP Obligations*"), shall be deemed to have been extended by the DIP Lender and its designees in good faith, as that term is used in §364(e) of the Bankruptcy Code and in express reliance on the protections offered by §364(e) of the Bankruptcy Code, and the DIP Obligations, the DIP Liens (as defined below), and the Superpriority Claims (as defined below) shall be entitled to the full protection of §364(e) of the Bankruptcy Code if this Interim Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise;

vi)     The Financing constitutes new loans and financial accommodations from the DIP Lender to the Debtor, separate and distinct from any transaction entered into by the Debtor and the DIP Lender prior to the Petition Date.

vii)    Entering into the Financing and the DIP Documents reflects the Debtor's exercise of prudent business judgment consistent with its fiduciary duties; and

viii)   The Debtor has requested entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Bankruptcy Rules. Absent granting the relief sought by this Interim Order, the Debtor's estate will be harmed immediately and irreparably. Consummation of the Financing in accordance with this Interim Order and the DIP Documents is in the best interests of the Debtor's estate consistent with its fiduciary duties.

Based on the foregoing findings and conclusions, the Motion, and the record before the

Court with respect to the Motion at the Interim Hearing, and good and sufficient cause appearing

therefore,

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

The Motion is granted to the extent provided herein, the Financing is authorized and approved, on an interim basis, subject to the terms and conditions set forth in this Interim Order.

All objections to the interim relief sought in the Motion to the extent not withdrawn or resolved are hereby overruled.

1.  **Authorization of the Financing and DIP Documents.**

(a)     The Debtor is hereby authorized and directed to (i) execute and enter into the DIP Documents on an interim basis and (ii) perform any acts and take all actions requested by the DIP Lender, in its sole and absolute discretion, related to this Interim Order and the DIP Documents, including, without limitation, the execution, delivery, and performance of the DIP Credit Agreement, any notes, security and pledge agreements, mortgages contemplated thereby and the other agreements referred to as and in the DIP Documents. All of the express and explicit terms, conditions, conditions precedent, negative covenants, affirmative covenants, promises, rights, duties, responsibilities, acknowledgements, agreements, representations and warranties set forth in the DIP Documents, which the same are expressly incorporated herein as if specifically set forth verbatim, are hereby approved in all aspects in form and in substance.

(b)     The Debtor is hereby authorized to execute, deliver, and perform one or more amendments, waivers, consents, or other modifications to and under the DIP Documents requested by the DIP Lender in its sole and absolute discretion by filing notice of such amendment, waiver consent, or other modification with this Court.  Following the filing of such notice, any party in interest may contest such amendment, waiver, consent, or other modification by filing a motion (an "*Amendment Challenge*") with this Court within five (5) business days of such filing. Subject to the convenience of this Court's calendar, a hearing on any Amendment Challenge shall be held within five (5) business days of the date that the Amendment Challenge is filed.  If an

Amendment Challenge is not timely filed and served and a hearing is not timely sought, or if the relief sought in the Amendment Challenge is denied, then the amendment, waiver, consent, or other modification shall become immediately effective.

(c)     The Debtor is hereby authorized to borrow money pursuant to the DIP Documents on an interim basis, and the Debtor is hereby authorized to incur indebtedness up to an aggregate principal amount not to exceed Five Million Dollars ($5,000,000.00), which shall be used only as permitted under the DIP Documents and in accordance with the Budget, and to enter into any and all other and further agreements and arrangements in connection therewith and to pay interest and expenses and incur DIP Obligations all in accordance with this Interim Order and the DIP Documents, including, without limitation, reasonable costs and expenses as may be due from time-to-time, specifically including, without limitation, fees and expenses of the professionals retained by the DIP Lender provided for in the DIP Documents.

(d)     The Debtor shall furnish the Budget to the DIP Lender in accordance with the terms of the DIP Documents.  Approval or disapproval by the DIP Lender of any Budget shall be in the DIP Lender's sole and absolute discretion.  In addition to and working in conjunction with the Budget, the amount of the Initial Advance shall be limited to the lesser of (i) the Interim Availability Amount; or (ii) an amount of funds approved and determined in Lender's sole and absolute discretion to be the minimum amount of funds required by Debtor-in-Possession to support Debtor-in-Possession's projected future expenditures to be incurred in Debtor-in-Possession's business operations during the first seven (7) calendar days set forth in the Budget. For any and all requests by the Debtor-in-Possession for funding after the Initial Advance, Debtor-in-Possession shall furnish to the DIP Lender a supplemental budget that supports an itemized request for financing based on a seven (7) calendar-day time period of anticipated future

expenditures to be incurred in Debtor-in-Possession's ordinary business operations in conformity with the Budget ("*Additional Advance Request*"). DIP Lender retains sole and absolute discretion to approve or reject any such requests under an Additional Advance Request. For the sake of clarity, any and all Additional Advance Requests shall conform to and work in conjunction with the Budget. For the avoidance of doubt, DIP Lender is not required to extend any credit under the DIP Facility after the Initial Advance without prior approval in Lender's sole and absolute discretion of an Additional Advance Request.

(e)     The Debtor shall not make any disbursements other than those set forth in the Budget; provided, however, disbursements may exceed any line-item disbursement amount in the Budget by no more than 5% on a cumulative basis from the Petition Date through the end of the Budget Period. If the Debtor desires to extend the Budget Period, the Debtor must provide the DIP Lender with any such new Budget, which shall remain subject to the prior written approval of DIP Lender in its sole and absolute discretion. If the DIP Lender refuses to approve a new Budget, its obligations to lend under this Interim Order and the DIP Credit Agreement shall be terminated.

(f)     In furtherance of the foregoing and without further approval of this Court, the Debtor is authorized and directed to (i) perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and (ii) pay all fees required or necessary for the Debtor's performance of its obligations under the Financing and under the DIP Documents.

2.     **Valid, Binding, Non-Avoidable Obligations**. Upon execution and delivery of the DIP Credit Agreement and the other DIP Documents, such DIP Documents shall constitute and represent valid, binding, and non-avoidable first-priority administrative-expense obligations of the Estate subject to the terms of this Interim Order for all purposes and at all times, including during

the Chapter 11 Case, any subsequently converted case of the Debtor under chapter 7 of the Bankruptcy Code or after the dismissal of the Chapter 11 Case or any subsequently converted chapter 7 case. No obligation, payment, right, transfer or grant of security or lien under the DIP Credit Agreement, the other DIP Documents or this Interim Order shall be stayed, restrained, voided, avoided, avoidable or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under §§502(d), 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

3. **Superpriority Claims**.

(a) Pursuant to §364(c)(1) of the Bankruptcy Code, all of the DIP Obligations approved under this Interim Order shall constitute allowed senior administrative-expense claims against the Debtor/Estate (the "*Superpriority Claims*") with priority over any and all administrative expenses, adequate-protection claims, diminution-of-value claims, and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in §§503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under §§105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113, or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for purposes of §1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under §503(b) of the Bankruptcy Code, and which shall be payable from and have recourse to all pre- and post-petition property of the Debtor and all proceeds thereof. The DIP Lender's Superpriority Claims granted under this Interim Order are not subject to any offset, defense, claim, counterclaim, or diminution of any type, kind, or

nature whatsoever, and are not subject to avoidance, subordination, recharacterization, or any other challenge pursuant to applicable state or federal law.

(b)　At any sale of all or a portion of the Debtor's assets, including without limitation, sales pursuant to §363 of the Bankruptcy Code or sales included as part of any restructuring plan subject to confirmation pursuant to §1129(b)(2)(A)(iii) of the Bankruptcy Code, the DIP Lender shall have the indefeasible right to credit bid, pursuant to §363(k) of the Bankruptcy Code, an amount up to the DIP Obligations then-outstanding.

(c)　In addition to the fees, costs, charges, and expenses authorized under the DIP Facility, the Superpriority Claim shall expressly include all of the DIP Lender's reasonable attorneys' and other professionals' fees arising from, related to, or in anticipation or negotiation of (i) the Financing; (ii) the DIP Collateral (as defined below); (iii) all proceedings or activities in anticipation of or connection with the Bankruptcy Case, interpretation, amendment, modification, enforcement, enforceability, validity, or carrying out of the DIP Credit Agreement or this Interim Order at any time; and (iv) all reasonable expenses, costs, and charges arising in connection therewith or related thereto. The DIP Lender shall be entitled to charge the Debtor's account or receive reimbursement thereof, in either case as a Superpriority Claim, on ten (10) days' written notice to the Notice Parties (as defined below) (the "*Fee Notice*") without application to or further order from the Court. The Fee Notice shall be drafted by the DIP Lender's counsel and sent with copies of such professionals' invoices to the DIP Lender, subject to redaction against disclosure of privileged and/or confidential information.

4.　DIP Liens and DIP Collateral. As security for the DIP Obligations, effective and automatically perfected upon entry of this Interim Order and without the necessity of the execution, delivery, recordation of filings by the Debtor or DIP Lender of any mortgages, security

agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by the DIP Lender of, or over, any DIP Collateral (defined below), the DIP Lender shall have a DIP Lien (as defined below) on the DIP Collateral (defined below). The DIP Lender shall have DIP Liens on all property and interests in property (whether tangible or intangible, real property or personal property), whether now owned or hereafter acquired by Debtor, whether acquired before or after the Petition Date. "DIP Collateral," as used herein, shall be all property, rights, title, and interests in all property of the Debtor or the Estate, whether tangible or intangible, real property or personal property, owned on the Petition Date or thereafter acquired, and shall include, without limitation, all present and future:

(a)      Accounts; inventory; equipment; goods; fixtures; documents; securities accounts; deposit accounts and all deposits and credits therein; investment property; software; Intellectual Property; all general intangibles, specifically including, without limitation, all intellectual property, in addition to and without limiting the property described and explicitly set forth in the definition of "*Intellectual Property*" set forth in the DIP Documents; healthcare insurance receivables; letters of credit, letter of credit rights, instruments, promissory notes, drafts and chattel paper (including electronic chattel paper and tangible chattel paper); supporting obligations with respect to any of the foregoing; books, records, and information relating to any of the foregoing and, or to the operation of Debtor's business, and rights of access to such books, records, and information, and all property on which such books, records, and information are stored, recorded and maintained; commercial tort claims; causes of action; money or other assets of Debtor, including without limitation all money and assets of Debtor held by DIP Lender, loaned by DIP Lender or constituting Cash Collateral in the Bankruptcy Case; as each of the foregoing assets may now or hereafter owned, held or acquired by Debtor.

(b)     All presently owned and hereafter acquired inventory and goods (including without limitation, all raw materials, work in process and finished goods) held, possessed, owned, held on consignment or held for sale, lease, return or to be furnished under contracts of services, in whole or in part, wherever located.

(c)     All presently owned and hereafter acquired equipment and fixtures of whatsoever kind and character now or hereafter possessed, held, acquired, leased or owned, together with all replacements, accessories, additions, substitutions and accessions to all of the foregoing, and all records relating in any way to the foregoing.

(d)     All presently owned and hereafter acquired books, records, data, plans, manuals, computer software, computer tapes, computer systems, computer disks, computer programs, source codes and object codes containing any information pertaining directly or indirectly to the Collateral and all rights to retrieve data and other information pertaining directly or indirectly to the Collateral from third parties.

(e)     All presently owned and hereafter acquired real property, leases, rents and leaseholds.

(f)     All refunds or other amounts due to the Debtor from any governmental entity, all tax refunds of any nature, insurance proceeds, insurance-premium refunds, deposits of any kind, security deposits, utility deposits, bonds and proceeds of same, causes of action (whether by contract or tort, common law or statutory, equitable or otherwise) and customer lists, whether acquired before or after the Petition Date, whether now owned and existing or hereafter acquired, created, or arising, and all products and proceeds thereof (including, without limitation, claims of the Debtor against third parties for loss or damage to such property), and all accessions thereto, substitutions and replacements therefor, and wherever located, and all assets acquired by the

Interim Order (i) Authorizing Debtor to Obtain Postpetition Financing on a
Senior Secured Superpriority Basis Pursuant to 11 U.S.C. §§105, 361, 362, 363,
and 364; (ii) Setting A Final Hearing; and (iii) Granting Related Relief          Page 12
3908090v.1 2477/0224

Debtor post-petition and recoveries by the estate under any provision of the Bankruptcy Code or other law.

For the avoidance of doubt, DIP Collateral shall include all causes of action, known or unknown, of the Debtor or the Estate, including causes of action arising under chapter 5 of the Bankruptcy Code against DIP Lender or DIP Lender's affiliates, other than causes of action arising §§547 or 548 of the Bankruptcy Code against entities other than the DIP Lender or the DIP Lender's affiliates. Any lien or security interest avoided pursuant to §§550, 551 and/or 552 of the Bankruptcy Code shall have the same priority as such avoided lien.

5. **First-Priority Lien on DIP Collateral**. The liens and security interests granted to the DIP Lender pursuant to the terms of the DIP Documents or this Interim Order ("*DIP Lien(s)*") shall constitute first-priority liens under §364(d)1) on all assets of the Debtor, Debtor-in-Possession, or the Estate, owned now or acquired thereafter, senior to all other liens and security interests, including replacement liens, but subject only to Permitted Encumbrances (as defined herein) and the Carve Out. No expense, cost, or charge in connection with the Case shall be charged against the DIP Collateral or DIP Lender under §§506(c) and 552(b) of the Bankruptcy Code, and the Debtor and the Estate hereby waive any rights each may have to seek such charges under §§506(c) and 552(b) of the Bankruptcy Code or other applicable law. DIP Lender shall be entitled to all of the rights and benefits of §552(b) of the Bankruptcy Code, and the "equities of the case" exception under §552(b) shall not apply to DIP Lender with respect to any proceeds, products, offspring, rents or profits of arising from the Lease or any of the DIP Collateral. "*Permitted Encumbrances*" is defined as liens securing ad valorem taxes assessed against any piece of DIP Collateral and due and owing to the applicable state or local taxing authority who under Texas state law has a first-priority lien. The foregoing is without prejudice to the rights of

the Debtor or any other party in interest, including the DIP Lender, to object to the validity, priority, or extent of such Permitted Encumbrances, or the allowance of such debts secured thereby, or to institute any actions or adversary proceedings with respect thereto. Notwithstanding anything in this Interim Order to the contrary, for the avoidance of doubt, no property acquired by the Debtor on the Petition Date or any time thereafter shall be included in the definition of a Permitted Encumbrance. Instead, DIP Lender is granted a first-priority security interest and lien in all property acquired by the Debtor-in-Possession on the Petition Date and any time thereafter, except such first-priority lien shall not attach to proceeds of a Permitted Encumbrance.

6. **Carve Out**. The carve out for certain expenses and professional fees incurred during the pendency of the Chapter 11 Case (the "*Carve Out*") means (a) allowed administrative expenses pursuant to 28 U.S.C. §1930(a)(6), and (b) allowed reasonable fees and expenses of the Case Professionals (as defined in the DIP Documents) as provided in the Budget approved by the Lender and incurred prior to a Termination Date (as defined in the DIP Documents), plus an amount up to $_____ for such fees and expenses incurred after a Termination Date. Notwithstanding anything herein to the contrary, neither the Carve Out nor (i) any other DIP Collateral, (ii) dollar of funding provided by the Facility, and (iii) cash collateral of the Lender may be used to (xx) attempt to modify or otherwise alter any of the terms and conditions set forth in this Interim Order, (yy) attempt to obtain, without Prepetition Lenders' written consent, this Court's use of the Prepetition Lenders' cash collateral, (zz) assert, allege, bring, including discovery, support any claim or cause of action, or the initiation or prosecution of any claim or cause of action against Lender, the Pre-Petition Lenders, their affiliates, or their agents, including any cause of action under chapter 5 of the Bankruptcy Code or state law of any type or nature

whatsoever. No part of the Carve Out may be used to prepare, initiate, consult, and prosecute a lawsuit or other action against DIP Lender or the Prepetition Lenders.

For the avoidance of doubt, (iv) payment of the Carve Out shall not reduce the amounts payable to DIP Lender hereunder or under the DIP Documents or affect the rights of DIP Lender to receive such payment; and (v) under no circumstances shall DIP Lender be responsible or liable for, or itself obligated to pay, any of the fees or other items constituting the Carve Out.

7. **Other Protection of DIP Lender's Rights**.

(a) Except as explicitly set forth in this Interim Order and the DIP Documents, none of the DIP Collateral shall be subject to any liens, claims, and encumbrances senior in priority to those of the DIP Lender under the DIP Documents and this Interim Order;

(b) Except as otherwise provided in this Interim Order, so long as the DIP Obligations have not been indefeasibly paid, no party may take any action to exercise remedies against any DIP Collateral without further order of the Court;

(c) The automatic-stay provisions of §362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary to permit (i) the Debtor and the DIP Lender to commit all acts and take all actions necessary to implement the Facility and this Order, (ii) all acts, actions, and transfers contemplated herein, and (iii) consistent with the terms of this Order, to permit the DIP Lender, at its option, pursue its rights and remedies in accordance with the DIP Documents and this Agreement.

(d) In no event shall the DIP Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or otherwise. The delay or failure to exercise rights and remedies under the DIP Documents or this Interim Order by the DIP Lender shall not constitute a waiver of the DIP Lender's rights hereunder, thereunder or

otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the applicable DIP Documents.

(e)     The Debtor waives and shall not be entitled to any right of setoff against the DIP Lender relating to the DIP Obligations.

(f)     The Debtor, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed in this Chapter 11 Case or any successor case, shall obtain credit or incur debt pursuant to §364(b), (c), or (d) of the Bankruptcy Code in violation of the DIP Documents and/or this Interim Order at any time prior to the indefeasible payment in full of all of the DIP Obligations, the satisfaction of the Superpriority Claims, or the termination of the DIP Lender's obligations to extend credit under the Facility and this Interim Order, including subsequent to the confirmation of any plan with respect to the Estate, then all of the cash proceeds from such credit or debt shall immediately be turned over to DIP Lender to be applied to the DIP Obligations.

(g)     The Debtor shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral without the prior written consent of DIP Lender (and no such consent shall be implied from any other action, inaction or acquiescence by the DIP Lender, except as otherwise provided for herein), which may be provided in the DIP Lender's sole and absolute discretion.  Absent further order of this Court, the Debtor shall not create or permit to exist any postpetition liens or encumbrances on any of its assets or property except any postpetition liens agreed to by DIP Lender in writing.

(h)     Until the Financing is paid in full, the Debtor is not authorized to obtain credit secured by a lien or security interest in DIP Collateral without prior written consent of the DIP Lender.

8.    **No Liability**.  From and after the Petition Date, no act committed or action taken by the DIP Lender under this Order, the collection of any prepetition claim owed to the DIP Lender, or the Facility shall be used, construed, or deemed to hold the Lender to be in "control" of or participating in the governance, management, or operation of the Debtor for any purpose, without limitation, or to be acting as a "responsible person(s)" or "owner(s) or operator(s)" or a person(s) in "control" with respect to the governance, management, or operation of the Debtor or its business (as such terms, or any similar terms, are used in the Internal Revenue Code, WARN Act, Comprehensive Environmental Response, Compensation and Liability Act, or the Bankruptcy Code, each as may be amended from time to time, or any other federal or state statute, at law, in equity, or otherwise) by virtue of the interests, rights, and remedies granted to or conferred on the Lender under the DIP Loan Documents or this Interim Order, including, without limitation, such rights and remedies as may be exercisable by the DIP Lender in connection with this Interim Order.

9.    **No Surcharge**. No costs or expenses of administration or other costs or expenses of the Debtor or the Estate that have been or may be incurred in this Chapter 11 Case, or in any subsequent chapter 7 case of the Debtor or other proceedings or matters related thereto, shall be charged against the Lender or any property that is collateral of the Lender pursuant to §§506(c) or 552(b) or otherwise.  As a condition precedent to the extension of the financing proposed herein, the Lender must be granted this surcharge protection.  No obligations incurred or payments or other transfers made by or behalf of the Debtor pursuant hereto or prior to the Petition Date shall be avoidable or recoverable from the Lender under any section of the Bankruptcy Code, or any federal, state, or other applicable law.

10.     **Monitoring of DIP Collateral**.  In the event the Debtor has defaulted under the DIP Credit Agreement, the DIP Lender reserves the right, in consultation with the Debtor but in the DIP Lender's sole and absolute discretion, to retain expert consultants, financial advisors or other professionals at the expense of the Debtor, which consultants and advisors shall be given reasonable access for purposes of monitoring the business of the Debtor and the value of the DIP Collateral. At all times, whether an Event of Default is in existence or not, Debtor will keep proper books of record and account in which full, true and correct entries are made of all dealings and transactions in relation to its business and activities.  Debtor will permit any representatives designated by Lender, upon reasonable prior notice, to visit and inspect its properties, to examine and make extracts from its books and records, to conduct examinations of and to monitor DIP Lender's DIP Collateral, and to discuss the Debtor's affairs, finances and condition with its officers and independent accountants, all at such reasonable times and as often as reasonably requested.

11.     **Financial Reporting**. The Debtor shall provide the DIP Lender with financial and other reporting as described in the DIP Documents and the following (the "*Reporting Information*"):

(a)     The Reporting Information shall include: (i) weekly reports of receipts and budgeted cash usage; (ii) copies of all reports filed with the Office of the United States Trustee within two (2) days after such filing; and (iii) such additional financial or other information concerning the acts, conduct, property, assets, liabilities, operations, financial condition, and transactions of the Debtor, or concerning any matter that may affect the administration of the estate, as the Lender may from time to time request within two (2) days of any such request.  All Reporting Information shall be in accordance with generally acceptable accounting principles.

(b)     The Debtor shall immediately deliver to the Lender and the Agent for the Pre-Petition Lenders any and all documentation that in any way relates to a solicitation, offer, or proposed sale or disposition of any material amount of property of this estate, including, but not limited to, letters of inquiry, solicitations, letters of intent, or asset purchase agreements. The Lender and the Agent and each Pre-Petition Lender shall not disclose such information other than to its attorneys, agents and advisors without the prior consent of the Debtor or upon order of the Court.

(c)     Lender, its representatives, agents, consultants, and other professionals shall be permitted, in coordination with the Debtor, to contact and communicate with the Debtor, creditors of the Debtor, and other third parties regarding potential transactions for the sale or other disposition of property of the Estate. The Debtor shall be responsive and cooperate in the coordination of all such contacts and communications. If the Debtor is not responsive and cooperative in the coordination of all such contacts and communications, then, upon notice of such by the Lender to the Debtor, the Lender and its representatives, agents, consultants, and other professionals shall be permitted to conduct such contacts and communications without the Debtor. This shall in no way waive, modify, or limit any rights and remedies that the Lender may have or come to have under this Interim Order any other document, or applicable law.

(d)     The Lender and its respective agents and advisors shall have full access, upon notice during normal business hours, to the Debtor's business records, business premises, and to the DIP Collateral to enable the Lender or its agents and advisors to (i) review, appraise, and evaluate the physical condition of the DIP Collateral, (ii) inspect and review the financial records and all other records of the Debtor concerning the operation of the Debtor's business, and (iii) evaluate the Debtor's overall financial condition and all other records relating to the operations

of the Debtor. The Debtor shall fully cooperate with the Lender regarding such reviews, evaluations, and inspections, and shall make its employees and professionals available to the Lender and its professionals and consultants to conduct such reviews, evaluations, and inspections.

12. **Perfection of DIP Liens**. This Interim Order and the DIP Loan Documents shall be sufficient and conclusive evidence of the priority, perfection, attachment, and validity of all of the Lender's security interests in and liens on the DIP Collateral, and the liens and security interests granted and created by this Interim Order, constitute valid, automatically perfected and unavoidable security interests, with the priorities granted hereunder and thereunder, without the necessity of creating, filing, recording, or serving any financing statements or other documents that might otherwise be required under federal or state law in any jurisdiction or the taking of any other action to validate or perfect the security interests and liens granted to the Lenders by this Interim Order and the DIP Loan Documents. To the extent that any applicable non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment, or perfection of the DIP Lender's liens and security interests authorized, ratified, or created by this Interim Order or otherwise would impose filing or registration requirements with respect to such liens, such law is hereby preempted to the maximum extent permitted by the Bankruptcy Code, otherwise applicable federal law, and the judicial power of the United States Bankruptcy Court. If the DIP Lender shall, in its sole and absolute discretion, elect for any reason to file any Uniform Commercial Code financing statements or other recordable documents to evidence perfection of the Lender's interests in property of the Estate, the Lender or upon the Lender's request, the Debtor is authorized and directed to execute, or cause to be executed, all such financing statements or other documents, and the filing, recording, or service (as the case may be) of such financing statements or similar documents shall be deemed to have been made at the time of and on the Petition Date, and the

signature(s) of any person(s) designated by the Debtor, whether by letter to the Lender or by appearing on any one or more of the agreements or other documents respecting the security interests and liens of the Lender granted hereunder, shall bind the Debtor and the Estate. The Lender may, in its sole and absolute discretion, execute such documents on the Debtor's behalf as the Debtor's attorney-in-fact, or file a certified copy of this Interim Order in any filing or recording office in any county or other jurisdiction in which the Debtor has real or personal property, and, in such event, the subject filing or recording officer is authorized and directed to file or record such documents or certified copy of this Financing Order. If directed by the DIP Lender, the Debtor shall file or record a copy of this Interim Order in the recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such copy of this Interim Order for filing and recording.

13. **Preservation of Rights Granted Under the Order**.

(a)     No claim or lien having a priority superior to or *pari passu* with those granted by this Interim Order to the DIP Lender shall be granted or allowed while any portion of the Financing or the commitments thereunder (including repayment of the Carve Out) or the DIP Obligations remain outstanding, and the DIP Liens shall not be (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under §551 of the Bankruptcy Code or (ii) subordinated to or made pari passu with any other lien or security interest, whether under §364(d) of the Bankruptcy Code or otherwise;

(b)     Unless all DIP Obligations shall have indefeasibly been paid in cash in full, the Debtor shall not seek, and it shall constitute an Event of Default, if there is, (i) any modification or extension of this Interim Order without the prior written consent of the DIP Lender, and no such consent shall be implied by any other action, inaction, or acquiescence; (ii) an order converting or

dismissing the Chapter 11 Case; or (iii) if Debtor seeks to obtain financing from any other source (such that any DIP Obligations would remain outstanding after any such funding) on either a *pari passu* or priority basis or if Debtor seeks to obtain financing junior to the DIP Lender without the DIP Lender's consent;

(c)        If an order dismissing the Chapter 11 Case under §1112 of the Bankruptcy Code, or otherwise, is at any time entered, such order shall provide (in accordance with §§105 and 349 of the Bankruptcy Code) that

(d)        The Superpriority Claims, first-priority liens, security interests and replacement security interests granted to the DIP Lender pursuant to this Interim Order shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations shall have been indefeasibly paid in cash in full and any claims for diminution have been satisfied (and that such Superpriority Claims, priority DIP Liens, replacement security interests, adequate protection superpriority claims and adequate protection liens shall, notwithstanding such dismissal, remain binding on all parties in interest); and this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens, and security interests referred to herein;

(e)        DIP Lender has acted in good faith in connection with the DIP Facility and with this Interim Order, and its reliance on this Interim Order is in good faith. Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with §364(e) of the Bankruptcy Code and to the extent of applicable law, if any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the validity, priority, or enforceability of any DIP Obligations, DIP Liens and adequate protection liens incurred prior to the actual receipt

**INTERIM ORDER (i) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION FINANCING ON A SENIOR SECURED SUPERPRIORITY BASIS PURSUANT TO 11 U.S.C. §§105, 361, 362, 363, AND 364; (ii) SETTING A FINAL HEARING; AND (iii) GRANTING RELATED RELIEF**    **PAGE 22**

3908090v.1 2477/0224

of written notice by the DIP Lender of the effective date of such reversal, stay, modification or vacation; or (ii) the validity or enforceability of any lien or priority authorized or created hereby or pursuant to the DIP Credit Agreement with respect to any DIP Obligations. Notwithstanding any such reversal, stay, modification, or vacation, DIP Obligations incurred by the Debtor prior to the actual receipt of written notice by the DIP Lender of the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the original provisions of this Interim Order, and the DIP Lender shall be entitled to all the rights, remedies, privileges and benefits granted in §364(e) of the Bankruptcy Code, this Interim Order and pursuant to the DIP Documents with respect to all uses of DIP Obligations; and

(f)     Except as expressly provided in this Interim Order or in the DIP Documents, the DIP Liens and the Superpriority Claims granted by the provisions of this Interim Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting the Chapter 11 Case to a case under chapter 7, dismissing the Chapter 11 Case, or by any other act or omission; or (ii) the entry of an order confirming a plan of reorganization (or a plan of liquidation) in the Chapter 11 Case and, pursuant to §1141(d)(4) of the Bankruptcy Code, the Debtor has waived any discharge as to any remaining DIP Obligations. The terms and provisions of this Interim Order and the DIP Documents shall continue in this Chapter 11 Case, in any successor case, or in any superseding chapter 7 case under the Bankruptcy Code. The DIP Liens, the Superpriority Claims and all other rights and remedies of the DIP Lender, and the adequate protection liens and the adequate protection superpriority claims granted by the provisions of this Interim Order and the DIP Documents shall continue in full force and effect until the DIP Obligations are indefeasibly paid in cash in full and any claims for diminution have been satisfied.

14. **Limitation on Use of Financing Proceeds and Collateral**. Notwithstanding anything herein or in any other order by this Court to the contrary, no DIP Collateral, portion of the proceeds of the Financing or part of the Carve Out may be used for any of the following (each, a "*DIP Lender Claim*") without the prior written consent of the DIP Lender: (a) to object, contest or raise any defense to the validity, perfection, priority, extent or enforceability of any amount due under any DIP Document, or the liens or claims granted under this Interim Order or any DIP Document; (b) to assert any claim or cause of action against the DIP Lender or any of the Prepetition Lenders, their respective agents, affiliates, representatives, attorneys or advisors with respect to the DIP Documents, the Financing or the Construction Loan; (c) to prevent, hinder or otherwise delay the DIP Lender's assertion, enforcement or realization on the DIP Collateral in accordance with the DIP Documents or this Interim Order; (d) to assert or prosecute any action for preferences, fraudulent conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses against the DIP Lender, the Prepetition Lenders or their respective affiliates, representatives, attorneys or advisors in connection with matters related to the Construction Loan, the Financing or the DIP Documents to the extent approved under this Interim Order; or (e) to seek to modify any of the rights granted to the DIP Lender hereunder or under the DIP Documents. This provision shall be binding on any subsequently appointed or elected trustee or examiner, if any.

15. **Events of Default**. The occurrence of any of the following shall constitute an Event of Default under this Interim Order, whether with or without notice of any kind to the Debtor by the Lender, and the Lender shall have no obligation to provide any notice of any such occurrence: (a) any default, violation, or breach of any of the terms of this Interim Order or the DIP Credit Agreement; (b) the occurrence of the Termination Date (as defined in the DIP Credit Agreement),

termination, expiration, or non-renewal of this Interim Order or the Facility as provided for herein or in the DIP Loan Documents; or (c) any "*Event of Default*" as defined or delineated in the DIP Credit Agreement. Any of the foregoing shall be individually an "Event of Default" under this Interim Order or collectively "*Events of Default*."

16. **Remedies**.

(a)     Immediately upon the occurrence of any Event of Default, and at all times thereafter, and without further act or action by the Lender, or any further notice, hearing, or Order of this Court: (i) the Facility shall be deemed immediately to be accelerated to the extent not already accelerated, and become due and payable for all purposes, rights, and remedies, (ii) the Lender's obligations in connection with the Facility shall immediately terminate, (iii) the Debtor's authority to use cash collateral of the Lender and any and all obligations of the Lender under this Interim Order and the DIP Agreement shall terminate, and (iv) the Lender shall be allowed to take any action authorized under the DIP Agreement .

(b)     Furthermore, upon the occurrence of any Event of Default, and at all times thereafter, then without further act or action by the Lender, or any further notice, hearing or order of this Court, the automatic stay of §362 shall be immediately modified, and the Lender shall be and is hereby authorized to take any and all actions and remedies that the Lender may deem appropriate, in its sole and absolute discretion, after five days' notice, to proceed against, take possession of, protect, and realize on the DIP Collateral and any other property of the Estate on which the Lender has been or may hereafter be granted liens and security interests to obtain repayment of the Facility, provided that the Lender shall not be obligated to take title to any of the DIP Collateral in the pursuit of the Lender's rights and remedies.

(c)     Also, upon or after the occurrence of any Event of Default, the Lender shall not be obligated to, but may, in its sole and absolute discretion, advance funds to the Debtor, and all such advances (i) shall not constitute a waiver, limitation, or modification of the Lender's rights and remedies pursuant to the DIP Loan Documents, and applicable law and (ii) shall be and hereby are granted all of the protections granted to the Lender under this Interim Order in connection with the Facility.  In addition to other remedies expressly set forth herein and those legal and equitable remedies available under applicable law, upon the occurrence of any Event of Default, Debtor's exclusive periods established under the Bankruptcy Code are terminated, and Lender shall have immediate relief from the automatic stay and may foreclose on all or any portion of the Collateral, collect accounts receivable and apply the proceeds thereof to the Indebtedness, occupy Debtor's premises to otherwise exercise remedies against the Collateral permitted by applicable law.

(d)     Before exercising any remedies against the Collateral, Lender must give five (5) days' written notice to Debtor, the Case Professionals, and the United States Trustee. During such five (5)-day notice period, Debtor is entitled to an emergency hearing with the Bankruptcy Court for the sole purpose of contesting whether an Event of Default has occurred. Unless during such period the Bankruptcy Court determines that an Event of Default has not occurred and/or is not continuing, the automatic stay of §362(a) of the Bankruptcy Code, as to Lender, shall be automatically terminated at the end of such notice period and without further notice or order.

17.     **Waiver of Claims**.  DEBTOR/DEBTOR-IN-POSSESSION (in its own right and on behalf of the estate, its REPRESENTATIVES, DIRECTORS, OFFICERS, EMPLOYEES, INDEPENDENT CONTRACTORS, ATTORNEYS AND AGENTS, AND ITS SUCCESSORS AND ASSIGNS (THE "*Releasing Parties*") HEREBY RELEASES, ACQUITS, AND FOREVER

DISCHARGES DIP LENDER, THE PREPETITION LENDERS AND EACH LENDER'S AGENT, REPRESENTATIVE, DIRECTOR, OFFICER, INDEPENDENT CONTRACTOR, ATTORNEY AND OTHER AGENT, AND SUCCESSORS AND ASSIGNS (THE "*Released Parties*") FROM ANY AND ALL ACTS AND OMISSIONS OF THE RELEASED PARTIES, AND FROM ANY AND ALL CLAIMS, CAUSES OF ACTION, AVOIDANCE ACTIONS, COUNTERCLAIMS, DEMANDS, CONTROVERSIES, COSTS, DEBTS, SUMS OF MONEY, ACCOUNTS, RECKONINGS, BONDS, BILLS, DAMAGES, OBLIGATIONS, LIABILITIES, OBJECTIONS, LEGAL PROCEEDINGS, EQUITABLE PROCEEDINGS, AND EXECUTIONS OF ANY NATURE, TYPE, OR DESCRIPTION WHICH THE RELEASING PARTIES HAVE OR MAY COME TO HAVE AGAINST THE RELEASED PARTIES, WHETHER DIRECTLY, INDIRECTLY OR DERIVATIVELY, WHETHER OR NOT IN CONNECTION WITH OR RELATED TO THE DIP FACILITY OR THE CONSTRUCTION LOAN OR ANY MATTER OR DOCUMENT RELATED HERETO, AT LAW OR IN EQUITY, BY STATUTE OR COMMON LAW, IN CONTRACT, IN TORT, INCLUDING UNDER CHAPTER 5 OF THE BANKRUPTCY CODE, WHETHER THE LAW OF THE UNITED STATES OR ANY OTHER COUNTRY, UNION, ORGANIZATION OF FOREIGN COUNTRIES OR OTHERWISE, KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED (THE "*Released Claims*"). THE DEBTOR ON BEHALF OF THE RELEASING PARTIES FURTHER COVENANTS NOT TO SUE THE RELEASED PARTIES ON ACCOUNT OF ANY RELEASED CLAIM. THIS PARAGRAPH IS IN ADDITION TO AND SHALL NOT IN ANY WAY LIMIT ANY OTHER RELEASE, COVENANT NOT TO SUE, OR WAIVER BY THE RELEASING PARTIES IN FAVOR OF THE RELEASED PARTIES.

18.     **Indemnification**.  The Debtor shall indemnify and hold harmless DIP Lender and its affiliates, respective, officers, directors, subsidiaries, successors and assigns, attorneys, and professional advisors, in their respective capacities as such, from and against any and all damages, losses, settlement payments, obligations, liabilities, claims, actions, or causes of action, whether groundless or otherwise, and reasonable costs and expenses incurred, suffered, sustained, or required to be paid by an indemnified party of every nature and character arising out of or related to the DIP Facility or the transactions contemplated thereby and by this Interim Order, whether such indemnified party is party thereto, as provided herein, except to the extent resulting from such indemnified party's gross negligence or willful misconduct as finally determined by a final non-appealable order of a court of competent jurisdiction.  The indemnity includes indemnification for DIP Lender's exercise of discretionary rights granted under this Interim Order.   In all such litigation, or the preparation therefor, the DIP Lender shall be entitled to select their own counsel and, in addition to the foregoing indemnity, the Debtor agree to promptly pay the reasonable fees and expenses of such counsel.

19.     **Allowed Claims Under Construction Loan/Proofs of Claim**.   Pursuant to paragraph H above, the Debtor/Debtor-in-Possession on behalf of itself and the Estate stipulated, agreed, and affirmed, among other things, the Prepetition Lenders' claims owed by the Estate under the Construction Loan.  As such, all claims asserted by the Prepetition Lenders under the Construction Loan are (a) allowed without further order of this Court or the need of the Prepetition Lenders to file any proof of claim or request for payment for payment in this Chapter 11 case or any successor cases for any claim owned by the Prepetition Lenders against the Debtor, Debtor-in-Possession, or the Estate and (b) not subject to offset, defense, claim, counterclaim, or diminution of any type, kind, or nature whatsoever, and is not subject to

avoidance, subordination, recharacterization, reduction, cap or limitation in amount under §502(b)(6) of the Bankruptcy Code, or any other challenge pursuant to applicable state or federal law. Nothing in this Interim Order shall be construed to adversely affect or alter Debtor's obligations under the Construction Loan. Any order entered by this Court in relation to the establishment of a bar date in this Chapter 11 case or any successor cases shall not apply to the Prepetition Lenders.

20.     **Effect of Stipulations on Third Parties**.

(a)     Each stipulation, admission and agreement contained in this Interim Order shall be binding on the Debtor and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for the Debtor) under all circumstances and for all purposes, and the Debtor is deemed to have irrevocably waived and relinquished all claims against the DIP Lender and the Prepetition Lenders as of the date of entry of this Interim Order;

(b)     Nothing in this Interim Order vests or confers on any person (as defined in the Bankruptcy Code) standing or authority to pursue any cause of action belonging to the Debtor or its estate; and

(c)     Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

21.     **Agent**. To the extent the DIP Lender appoints any agent (collateral agent, administrative agent, or otherwise) in connection with any DIP Document, such agent may be considered (at the election of the DIP Lender) the DIP Lender for the purposes of any account control agreement, as loss payee under the Debtor's insurance policies, or as the secured party under the Financing, and such agent shall have all rights and powers attendant to that position

(including, without limitation, rights of enforcement). Each such agent appointed may serve as agent for purposes of perfecting the DIP Lender's security interests and liens on all DIP Collateral that is of a type such that perfection of a security interest therein may be accomplished only by possession or control by a secured party.

22.     **Order Governs**.  In the event of any inconsistency between the provisions of this Interim Order and the DIP Documents, the provisions of this Interim Order shall govern.

23.     **Binding Effect; Successors and Assigns**. The DIP Documents and the provisions of this Interim Order, including all findings herein, shall be binding on all parties in interest in this Chapter 11 Case, including, without limitation, the DIP Lender, the Prepetition Lenders,  any committee appointed in this Chapter 11 Case, and the Debtor and of the respective successors and assigns of the foregoing (including, with respect to the Debtor, any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the Debtor's estate, an examiner appointed pursuant to §1104 of the Bankruptcy Code or any other fiduciary appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor) and shall inure to the benefit of the DIP Lender and its respective successors and assigns, provided, however, that the DIP Lender shall have no obligation to permit the use of DIP Collateral or to extend any financing or permit the use of cash collateral to any chapter 11 or 7 trustee or similar responsible person appointed for the estate of the Debtor. In determining to make any loan (whether under the DIP Credit Agreement, a promissory note or otherwise), or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Documents, the DIP Lender shall not (a) be deemed to be in control of the operations of the Debtor; (b) owe any fiduciary duty to the Debtor, its creditors, shareholders or estate; or (c) be deemed to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar

terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§9601, et seq., as amended, or any similar federal or state statute).

24.     **Effective Dates**. This Order shall constitute findings of fact and conclusions of law, shall take effect upon its entry, shall not be subject to stay, and shall be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Order. The Clerk of the Court is hereby directed to forthwith enter this Order on the docket of the Court maintained in regard to the Chapter 11 Case.  The DIP Lender's and to provide credit under the DIP Documents and this Interim Order, subject to the funding and Budget limitations herein, shall be effective *nunc pro tunc* from the Petition Date to and including the Termination Date. Immediately upon the Termination Date, all of Debtor's authority to use such cash collateral and to obtain credit under the DIP Credit Agreement and this Interim Order shall terminate, unless extended by written agreement of the parties hereto ("*Budget Extension*"), a copy of which shall be promptly filed with the Bankruptcy Court by the Debtor.  Upon such filing, the Budget Extension shall be deemed valid and authorized without further order of this Bankruptcy Court.

25.     **Headings**. Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

26.     **Hearing**. The Final Hearing will be held by this Court on _____ 2015 at __:00 _.m. (prevailing Central Time) to consider the entry of a Final Order. The Debtor shall promptly transmit copies of this Interim Order, which shall constitute adequate notice of the Final Hearing, to the parties having been given notice of the Interim Hearing and to any party that has

filed with this Court a request for notices. Any party in interest objecting to the relief sought at the Final Hearing shall file a written objection, which shall be served on the following parties (collectively, the "*Notice Parties*"), (a) counsel of record for the Debtor at the address and contact information provided in the Bankruptcy Court's docket of this Chapter 11 Case; (b) the Office of the United States Trustee for the Western District of Texas; (c) the Debtor's 20 largest unsecured creditors on a consolidated basis; (d) McGuire Craddock & Strother, P.C., 2501 North Harwood, Suite 1800, Dallas, Texas 75201 (Attention: J. Mark Chevallier) counsel to the DIP Lender and Agent for the Prepetition Lenders; (e) any additional known Persons holding liens in the DIP Collateral in compliance with Bankruptcy Rules 4001(b) and 4001(c); and (f) any other parties-in-interest required to receive notice under the Local Bankruptcy Rules, and shall be filed with the Clerk of the Court for the United States Bankruptcy Court for the Western District of Texas, so as to allow actual receipt by the foregoing no later than _____, 2015 at 5:00 p.m. (prevailing Central Time).

27. **Notice Of Entry Of Interim Order**. The Debtor's counsel shall serve a copy of this Interim Order or a suitable notice respecting same on all of the following parties: (a) the U.S. Trustee; (b) the Internal Revenue Service; (c) the parties included on the Debtor's list of its twenty (20) largest unsecured creditors; (d) counsel to the DIP Lender and Agent for the Prepetition Lenders; (e) all other known parties with liens of record on the Debtor's assets as of the Petition Date; (f) all financial institutions at which the Debtor maintains deposit accounts; and (g) all other parties required to receive notice pursuant to Bankruptcy Rules 2002, 4001, or 9014, the Local Bankruptcy Rules, or requesting to receive notice prior to the date hereof.

28.     **<u>Retention Of Jurisdiction</u>**. The Court shall retain jurisdiction to hear, determine, and, if applicable, to enforce the terms of any and all matters arising in, arising under, or related to the Facility or this Interim Order.

*### End of Order ###*